IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| UNITED STATES OF AMERICA | § | |
| --- | --- | --- |
| | § | |
| V. | § | CRIMINAL ACTION NO. 6:11CR50 |
| | § | |
| DUSTIN JAMES POOLE | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

On October 19, 2011, the Court referred Defendant's Motion to Suppress (document #20) to the undersigned for consideration and a recommended disposition. A hearing was conducted on December 14, 2011 and December 15, 2011. For the reasons assigned below, the undersigned recommends that the motion be denied.

On June 2, 2011, a federal grand jury returned an Indictment charging Defendant with two counts of the offense of felon in possession of a firearm in violation of Title 18, United States Code Section 922(g)(1), and one count of the offense of felon in possession of ammunition in violation of Title 18, United States Code Section 922(g)(1). The Indictment charges offense conduct that allegedly occurred on or about May 12, 2011 in Henderson County, Texas.

*Facts*

According to the facts presented in the briefs and through testimony at the suppression hearing, an abandoned vehicle was discovered on property belonging to Shawna Trevino and her husband on May 12, 2011, near Seven Points, Texas. Mr. Trevino reported the vehicle to the police.

Shawna Trevino saw the vehicle pull into her driveway and turn around earlier in the day. Deputy Brian Hall from the Henderson County Sheriff's Department came to the Trevino's property to investigate the vehicle. The vehicle was previously reported stolen in Star Harbor, Texas. Shawna Trevino spoke to Deputy Hall when he came to their property to investigate the vehicle. In his offense report, Deputy Hall recorded Shawna Trevino's description of the individual she saw in the stolen vehicle as "a male with a dark complexion with a white shirt and baseball cap turned around backwards." In her own written statement, Shawna Trevino only described the driver as "a young man wearing a baseball cap (turned around backwards) + a white tanktop t-shirt." She does not recall saying that the young man had a dark complexion; only that he was not African-American and that she could not discern whether he was white or Hispanic.

While speaking to Deputy Hall, Shawna Trevino viewed a Ford Mustang drive by with two occupants – a male driver and a female passenger. To her recollection, the male driver was wearing a white sleeveless t-shirt and a baseball cap. The vehicle came back a short time later in the opposite direction, this time with a female driver and male passenger. At that time, Shawna Trevino told Deputy Hall that the male passenger in the car looked like he could be the same person she saw earlier in the stolen vehicle.

Deputy Hall then got into his patrol car and followed the Mustang. Deputy Hall activated his lights and stopped the vehicle. At the time of the stop, Holly Gordon was driving the vehicle and Dustin Poole was in the passenger seat. Poole was wearing a blue sweatshirt and was not wearing a hat. Deputy Hall approached the vehicle, informed the occupants why he stopped them and asked for their identification. Deputy Hall returned to his patrol car and called dispatch to run the driver's license numbers. Less than two minutes passed from the time Deputy Hall stopped the vehicle and when he called dispatch to check their driver's license numbers. Dispatch responded that there was

an outstanding warrant for Dustin Poole out of Athens, Texas for the illegal use of a credit card. Deputy Hall learned of the warrant approximately five minutes into the traffic stop. At that point, Deputy Hall called Sgt. Goodell for backup.

Before Sgt. Goodell arrived, Deputy Hall approached the passenger side window of the Mustang and informed Poole that he had an outstanding warrant. Poole protested and complained that he was on federal parole, but exited the vehicle as directed by Deputy Hall. As Deputy Hall attempted to handcuff Poole, however, Poole took off running. Deputy Hall pursued him on foot and called for assistance.

Holly Gordon remained with the vehicle when Poole fled. Sgt. Patrick Johnson from the Gun Barrel Police Department arrived and instructed Gordon to exit the vehicle. Neither Gordon nor Johnson were presented for testimony at the suppression hearing. Detective Michael Teel from the Henderson County Sheriff's Office arrived on the scene after Sgt. Johnson. According to Detective Teel, Sgt. Johnson reported that he viewed two firearms under the front passenger seat of the Mustang. Sgt. Johnson placed one of the firearms – a Glock, Model 22, .40 caliber pistol – on the seat and left the other one – a Ruger, Model Single Six, .22 caliber revolver – under the seat, which is how Detective Teel found them. Gordon told Detective Teel that the guns did not belong to her and that she did not know they were in car.

Gordon explained to Detective Teel that the Mustang was purchased for her by Poole, but that Poole had the car the previous two weeks because they had ended their relationship. Gordon stated that she and Poole reconciled the night before the traffic stop and the day of the traffic stop was the first time she had been in the car for two weeks. She told Detective Teel, however, that the car was in her name, which was verified when Detective Teel ran the license plate on the car. Poole's mother, Ruth Wallace, testified that Poole intended to have paperwork completed to change

the car's title to Poole's name, but the paperwork had not been completed. Gordon was cooperative with Detective Teel and consented to a search of the vehicle after Detective Teel verified that the car was registered to her. The search revealed, among other things, the two pistols and ammunition. Poole was located and arrested four days later.

*Discussion and Analysis*

In his motion to suppress, Poole argues that the traffic stop was not justified at its inception and amounted to an illegal detention. He complains that the description of the individual in the stolen car provided by Shawna Trevino is at odds with his own appearance, such that Deputy Hall did not have a reasonable suspicion of illegal activity before stopping the vehicle. He further argues in his brief that the search of the vehicle was illegal because there was a significant temporal gap between the allegedly illegal detention and the consent to search the vehicle. Poole submits that Gordon was alone in the vehicle for a period of time before Sgt. Johnson arrived and Detective Teel obtained consent from Gordon to search the vehicle after Sgt. Johnson had already apparently conducted a search that revealed the two pistols under the passenger seat. Although not addressed in the motion to suppress, Poole argued at the suppression hearing that the car was his because Gordon returned it to him two weeks earlier when they ended their relationship.

Traffic Stop

The Fourth Amendment's prohibition against unreasonable searches and seizures applies to police conduct that falls short of a full blown arrest, including brief investigatory stops. *Terry v. Ohio*, 393 U.S. 1, 14, 88 S.Ct. 1868, 1876 (1968). A brief investigative stop is permissible if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot. *United States v. Zavala*, 541 F.3d 562, 574 (5th Cir.2008); *United States v. Martinez*, 486 F.3d 855, 861 (5th Cir.2007). An investigative stop may also be appropriate for a past crime, as opposed to a

4

crime that is currently taking place. *United States v. Hensley*, 469 U.S. 221, 229, 105 S.Ct. 675, 680 (1985). A two-part inquiry is used to determine whether an investigative stop was proper: (1) whether the officer's action was justified at its inception; and (2) whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop. *United States v. Pack*, 612 F.3d 341, 350 (5th Cir.2010); *United States v. Brigham*, 385 F.3d 500, 506 (5th Cir.2004) (*en banc*). An officer should employ the least intrusive means reasonably available to verify or dispel his suspicion in a short period of time. *Id.* When the traffic stop is made without a warrant, the burden is on the government to show reasonable suspicion. *United States v. Jaquez*, 421 F.3d 338, 340-41 (5th Cir.2005). The government must show a "minimum level of objective justification for the officer's actions, measured in light of the totality of the circumstances." *United States v. Tellez*, 11 F.3d 530, 532 (5th Cir.1993).

The officer must have reasonable suspicion to justify the stop, in view of the totality of the circumstances; meaning, he must have a particularized and objective basis for suspecting legal wrongdoing. *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744 (2002). The officer must have more than a hunch, but a preponderance of the evidence is not required. *United States v. Neufeld-Neufeld*, 338 F.3d 374, 378 (5th Cir.2003); *United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 1585 (1989). The officer's "reasonable suspicion" need not rise to the level of probable cause. *United States v. Zavala*, 541 F.3d at 575. A law enforcement officer with the requisite level of suspicion is entitled to "stop" a suspect for a reasonable period of time in order to verify or dispel his suspicions. *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325 (1983). An officer, in the course of effectuating the stop, may examine the occupants' identification and a run a computer check of driver's license numbers to investigate whether there are any outstanding warrants. *United States v. Pack*, 612 F.3d at 350; *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir.2005).

In this case, the facts adduced at the suppression hearing show that Deputy Hall had a particularized, reasonable suspicion of wrongdoing when he stopped the vehicle driven by Gordon. He acted upon more than just an inchoate and unparticularized suspicion or hunch. *See Terry v. Ohio*, 393 U.S. at 27. While Deputy Hall was obtaining information from a witness who observed someone driving a stolen vehicle, the witness pointed to Poole as he rode by in a Mustang and told Deputy Hall that the person she saw in the stolen car looked like him. The statement in Deputy Hall's written report concerning the complexion of the person seen in the stolen vehicle is at odds with the eye witness' testimony at the suppression hearing concerning the description that she provided to Deputy Hall. Presented with the witness' identification of Poole as looking like the person she saw driving the stolen vehicle, Deputy Hall's initial stop was based upon a particularized, reasonable suspicion of wrongdoing and was lawful.

Once Deputy Hall stopped the vehicle, he conducted only brief questioning of Gordon and Poole as to their identification and ran a computer check to investigate whether there were any outstanding warrants for either of them. Simple questioning, whether related to the purpose of the stop or not, is not a violation of the Fourth Amendment because the Fourth Amendment protects against detention, not questioning. *See United States v. Shabazz*, 993 F.2d 431, 436 (5th Cir.1993). Deputy Hall's investigation upon stopping the vehicle was very brief and limited in scope. Deputy Hall quickly ascertained that there was an outstanding warrant for Poole's arrest and proceeded accordingly. Poole's assertion that the initial stop and brief investigation were impermissible under the Fourth Amendment is without merit.

Vehicle Search

In this case, Gordon was the registered owner of the vehicle at issue. Although Poole presented testimony from his mother at the suppression hearing purporting to show that he

6

subjectively intended to take the car back from Gordon and have the title to the car changed, the evidence shows that the vehicle was purchased for Gordon and was registered to Gordon at the time of the vehicle search. Gordon was also driving the vehicle at the time of the traffic stop. A passenger in a vehicle does not have a privacy interest in the vehicle, such that an automobile search does not implicate a passenger's Fourth Amendment rights. *United States v. Grant*, 349 F.3d 192, 196 (5th Cir.2003). A non-owner passenger does not have standing to challenge an automobile search. *Id.*

Poole apparently argues that he had a possessory interest in the vehicle because Gordon allegedly gave him the vehicle when they stopped dating two weeks prior to the traffic stop. He did not, however, assert his possessory interest to the law enforcement officers prior to the search of the vehicle. *See United States v. Riazco*, 91 F.3d 752, 754 (5th Cir.1996). Instead, Poole chose to run when Deputy Hall attempted to arrest him. He never returned to the vehicle. Poole was located and arrested four days later. Even if the Court were to assume that Poole had a legal possessory interest in the vehicle, his decision to flee the scene and not return resulted in a voluntary abandonment of the vehicle. A defendant has no standing to complain about the search of property that he voluntarily abandons. *United States v. Quiroz-Hernandez*, 48 F.3d 858, 864 (5th Cir.1995) (*en banc*). As set forth above, the initial stop and attempted arrest of Poole were proper, rendering Poole's abandonment of the vehicle voluntary and not influenced by improper police conduct. *Id.; see also United States v. Alvarez*, 6 F.3d 287, 289-90 (5th Cir.1993). Poole's challenge to the search of the vehicle is without merit.

Having heard the evidence and arguments of counsel and considered the briefs filed in this case, the undersigned finds and recommends that the Motion to Suppress be denied.

<u>Recommendation</u>

It is recommended that the Motion to Suppress (document [#20](#)) be denied.

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after service shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the District Court. *[Douglass v. United Services Auto. Assn., 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc)](#)*.

So **ORDERED** and **SIGNED** this **30** day of **December, 2011.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE